# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **LEON LESMEISTER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:05CV2262 TCM** |
| | ) | |
| **SCOTT LAWRENCE and** | ) | |
| **CHRIS KOSTER,**[1] | ) | |
| | ) | |
| **Respondents.** | ) | |

### MEMORANDUM AND ORDER

The 28 U. S. C. § 2254 petition of Leon Lesmeister ("Petitioner"), a Missouri prisoner

serving an aggregate term of ten years imprisonment, for federal habeas corpus relief is before

the undersigned United States Magistrate Judge for review and final disposition.[2]

---

[1] At the time this action was filed, Petitioner was incarcerated at the Farmington Correctional Center, where Al Luebbers, the originally named Respondent, was the Superintendent. Petitioner recently advised the Court that he is now at the Northeast Correctional Center, where Scott Lawrence is the Superintendent. Therefore, the Court will substitute Scott Lawrence for Al Luebbers as the Respondent in this case.

Additionally, at the time he filed this action, Petitioner was serving the first five year term of the two consecutive five year terms of imprisonment to which he was sentenced, and would in the future serve the second five year term of his sentence. Because at the time he filed this action, Petitioner was challenging a sentence he was going to serve in the future, the Attorney General of Missouri, Chris Koster, will be added as a proper party respondent. See Rule 2(b), Rules Governing Section 2254 in the United States District Courts.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

## Background

By an original information, Petitioner was charged, as a persistent misdemeanor offender, with two counts of second degree statutory sodomy of P.M., a girl under the age of seventeen, between August 1, 1997 and August 15, 1997. (Resp. Ex. F[3] at 7-8.) After unsuccessful guilty plea proceedings, Petitioner was tried before a jury on an amended information charging Petitioner with two class C felonies of statutory sodomy in the second degree.[4] (Resp. Ex. F at 3; Resp. Ex. G at 7)

At trial, the State presented the testimony of P.M. (Resp. Ex. G at 134-85), P.M.'s mother (id. at 116-24), the detective who investigated the report of the incidents (id. at 124-

_____

[3] Petitioner submitted all of the exhibits Respondent submitted, plus others. The exhibits submitted by Petitioner were not separately identified; thus, the undersigned will cite to Respondent's exhibits, unless the material was only provided by Petitioner. The Court will, however, cite to Petitioner's copy of the motion court's "Findings of Fact and Conclus[]ions of Law and Order," which is part of Petitioner's "Ex. 2 Packet 2"), because the copy of that document submitted by Respondent is missing page 2, see Resp.'s Ex. A at 36-40.

Neither Respondent's list of Respondent's exhibits nor the references in Respondent's brief to Respondent's exhibits are correct because Respondent identified the materials from the trial and direct appeal proceedings as Exhibits A through E, but they are actually marked Exhibits F through J, and Respondent identified the materials from the post-conviction motion court and post-conviction appellate court proceedings as Exhibits F through J, when those are actually marked Exhibits A through E. The Court will refer to Respondent's exhibits by the exhibit letter actually marking them.

Additionally, early in these proceedings, the Court ordered Petitioner to file his petition and supporting exhibits under seal because they contained references to P.M.'s identity. See Order, dated December 20, 2005 (Doc. 2). The Court notes that, while there are no references to P.M.'s identity in Respondent's Response to the Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue (Doc. 6), there are references to her identity in the exhibits supporting that Response (Doc. 8). Therefore, the Court will order the Clerk of the Court to place Respondent's exhibits under seal as well.

[4] The amended information is not available in the record and is not reflected on the trial court's docket sheet that was filed as part of the legal file.

33), and an employee of the floral department of a store where a dozen long-stemmed roses were ordered for delivery to P.M. in September 1997 (id. at 185-90).  Petitioner presented the testimony of Petitioner's niece, sister-in-law, and brother (id. at 192-204, 225-42, and 242-55), as well as the testimony of Petitioner's work supervisor (id. at 212-24).  Petitioner did not testify.  (See id. at 256-59).

The trial testimony revealed the following.  Petitioner lived in his brother's home, with his brother's family, including Petitioner's brother, sister-in-law, and niece.  (Id. at 137, 199, 225, 242-43.)  The two offenses occurred in Petitioner's home, which was across the street and about three houses away from P.M.'s home.  (Id. at  117, 134, 137-41, 141-45, 168-69, 198.)  P.M. frequently visited Petitioner's home from about June 1996 until shortly after Petitioner's arrest on these charges.   (Id. at 194-96, 227, 229-30, 233, 234-35, 243-46, 249, 253.)

P.M. testified to the details of the two incidents, which she said occurred around noon, while she was alone with Petitioner in the kitchen of Petitioner's home, which she had visited to talk with Petitioner's niece about school.  (Id. at 137-38, 138-41, 142-46, 164, 165, and 169.)  P.M. further testified that she was in the Lesmeister residence "[a]bout 20 minutes" during each incident.  (Id. at 164.)  She recalled the first incident occurred around August 11, 1997, but she was not positive that it was the 11th (id. at 137, 146, 165, 166, 178-81, and 182), and the second incident occurred around August 15, 1997, but she did not remember the exact date (id. at 142, 146, 165, 166, 178-8, and 182).  By September 23rd, P.M. had received several items from Petitioner, including a softball glove, a ring, earrings, a watch, and a dozen

long-stemmed roses, along with a card,[5] that was delivered with the flowers, and a letter.[6] (Id. at 116-17; 146-53, 171-73; see also id. at 201, 236-37, 240-41, 253-54.) After the delivery of the roses, P.M.'s parents learned from P.M. what had happened and contacted the police. (Id. at 118-21.)

In relevant part, prior to and during trial Petitioner's counsel unsuccessfully objected to the admission into evidence of the letter and card. (Resp. Ex. F at 19-20; Resp. Ex. G at 13-19, 20-22, 109-10, 146, 151, 153-54, 162, 238, and 301.) For demonstrative purposes, an enlargement of the letter was used during trial, but was not admitted into evidence. (Resp. Ex.

---

[5] The card is not available in the record. P.M. read the card as stating, "[P.M.], I really care about you. Call me and let's make an appointment to talk," and as being signed by "Leon." (Resp. Ex. G. at 151.) P.M. said she did not know anyone named Leon other than Petitioner. (Id. at 153.)

[6] This letter is not available in the record. As quoted by the prosecutor during his closing argument, this letter stated in part:

We had an appointment on Monday. . . .

You never bothered to show up. . . . Especially when you see me on the porch. I know you didn't baby-sit or anything, and I saw you go to [another place]. . . .

I told you I had some serious questions to ask you, and now you will not come by. . . . I picked up something Monday, and it is slowly dying and you may never see what it is. It hurts me to think that I may have to throw it away. . . .

It is very important that I talk to you, and it needs to be today or tomorrow. . . . I want back the birthday present. . . . You didn't even say thank you. You grabbed it and ran. . . .

You ran out and then you took off. Your party was not starting that early. I know this. . . . I have several serious and important things to talk to you about. . . . I'll be home at 4:50 today and tomorrow.

(Resp. Ex. G at 281-82. See also id. at 202, 240-41.)

G at 160-62.) While the letter and card, which were admitted during trial, were sent to the jury during deliberations, as the jury requested, the trial court did not send the enlarged letter to the jury during its deliberations. (Id. at 301-03.)

During trial, Petitioner's supervisor, an assistant manager at the store where Petitioner worked (id. at 212-13), testified that he did not remember specifically when Petitioner worked during August 1997 (id. at 214-15). Part of the supervisor's responsibilities included reviewing employees' time-cards for accuracy before forwarding them to the store's payroll department and, he testified, the time-cards accurately reflected the amount of time an employee had worked. (Id. at 214.) Based on Petitioner's time-cards, Petitioner's supervisor testified to the days and hours on each of those days that Petitioner worked from August 1, 1997, through August 16, 1997, including the times Petitioner clocked out and in for lunch on each of his work days during that period. (Id. at 218-21.) This testimony established that Petitioner clocked out at 1:23 p.m. and clocked back in at 2:18 p.m on August 11th (id. at 220), and clocked out at 12:34 p.m. and clocked back in at 1:34 p.m. on August 15th (id.). The supervisor also testified that Petitioner worked August 1st and 2nd, again August 5th through August 12th, and, then again from August 14th through August 16th, with Petitioner clocking out for approximately one hour at some point between about 12:05 p.m. and about 2:40 p.m. each of those work days, except on Sunday, August 10th, when Petitioner worked five hours and did not take lunch. (Id. at 218-21.) The supervisor, who had driven Petitioner home once, stated it took about fifteen minutes to get from the store to Petitioner's home. (Id. at 223.)

In relevant part, the trial court gave two alibi instructions to the jury, Instructions 6 and 7, that were offered by Petitioner. (Id. at 270-71; Resp. Ex. F at 32, 33) One of those instructions applied to each count. Instruction No. 6 for Count I and Instruction No. 7 for Count II stated:

> One of the issues under Count I [for Instruction No. 6 or Count II for Instruction No. 7] is whether the [Petitioner] was present at [his home address in] St. Peters, Missouri between the 1st day of August, 1997 through the 15th day of August, 1997. On that issue, you are instructed as follows:
>
> 1. The state has the burden of proving beyond a reasonable doubt that the [Petitioner] was present at the time and place the offense is alleged to have been committed.
>
> 2. If the evidence in this case leaves in your mind a reasonable doubt that the [Petitioner] was present at [his home address in] St. Peters, Missouri, between the 1st day of August, 1997 through the 15th of August, 1997, then you must find the [Petitioner] not guilty under Count I [for Instruction No. 6 or Count II for Instruction No. 7].

(Resp. Ex. F at 32, 33.)

The trial court refused to give several other versions of the alibi instructions offered by Petitioner, including two alternative sets of instructions offered in lieu of Instructions 6 and 7. (Resp. Ex. G at 263-70.) Those refused sets of instructions contained the same paragraph numbered 1 as the paragraph numbered 1 in Instructions 6 and 7 given to the jury, and changed only the wording of the introductory paragraph and the paragraph numbered 2 in Instructions 6 and 7 given to the jury. The refused Instructions 6A and 7A, said in relevant part:

6

One of the issues under Count I [for refused Instruction 6A or Count II for refused Instruction 7A] is whether the [Petitioner] was present at [his home address in] St. Peters, Missouri, on August 11, 1997 during the mid-day hours [for refused Instruction 6A or during the mid-day hours of August 15, 1997 for refused Instruction 7A]. On that issue, you are instructed as follows:

. . .

2. If the [Petitioner] was at work at [his place of employment] in Weldon Springs, Missouri during the mid-day hours of August 11, 1997, [for refused Instruction 6A or August 15, 1997 for refused Instruction 7A] or if you do not find and believe from the evidence beyond a reasonable doubt that the [Petitioner] was present at [his home address in] St. Peters, Missouri, during the mid-day hours of August 11, 1997 [for refused Instruction 6A or August 15, 1997, for refused Instruction 7A], then you must find the [Petitioner] not guilty under Count I [for refused Instruction 6A or Count II for refused Instruction 7A].

(Resp. Ex. F at 40 and 43.)   The refused Instructions 6B and 7B, said in relevant part:

One of the issues under Count I [for refused Instruction 6B or Count II for refused Instruction 7B] is whether the [Petitioner] was present at [his home address in] St. Peters, Missouri, between August 1, 1997 and August 15, 1997 during the mid-day hours. On that issue, you are instructed as follows:
. . .

2. If the [Petitioner] was at work at [his place of employment]  in Weldon Springs, Missouri between August 1, 1997 and August 15, 1997, during the mid-day hours, or if you do not find and believe from the evidence beyond a reasonable doubt that the [Petitioner] was present at [his home address in] St. Peters, Missouri, between August 1, 1997 and August 15, 1997, during the mid-day hours, then you must find the [Petitioner] not guilty under Count I [for refused Instruction 6B or Count II for refused Instruction 7B].

(Id. at 41 and 44.)

The jury found Petitioner guilty of two counts of statutory sodomy in the second degree.  (Id. at 46-47.)  The trial court subsequently sentenced Petitioner to two consecutive

terms of five years imprisonment, for a total aggregate term of ten years imprisonment.  (Id. at 61-62.)

In his motion for new trial or in the alternative judgment of acquittal, Petitioner challenged the admission of the letter and card P.M. had received and the refusal to give either offered Instructions 6A and 7A or offered Instructions 6B and 7B.  (Id. at 52, 53, 55-56.)  The trial court denied that motion. (Resp. Ex. G at 330.)

On appeal, Petitioner argued the trial court violated his constitutional rights to due process, to present a defense, and to a fair trial by failing to give refused alibi Instructions 6A and 7A or refused alibi Instructions 6B and 7B, because the evidence supported those instructions and they included the times, as well as the dates, of the alleged offenses.  (Resp. Ex. H at 14-15 and 18.)  Petitioner also argued on direct appeal that the trial court violated his rights to due process and a fair trial by denying Petitioner's motion in limine to exclude, and overruling Petitioner's objections to, the admission, enlargement, and display of the letter P.M. received and the admission of the card P.M. received, which, Petitioner argued, lacked foundation.  (Id. at 16-17 and 30.)

The appellate court affirmed Petitioner's conviction and sentence in a two paragraph order (Resp. Ex. J.) and denied Petitioner's motion for rehearing on May 2, 2002 (Attachment to Petr.'s Notice of Filing Application to Transfer to the Supreme Court of Missouri).

Petitioner then filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 (Resp. Ex. A at 6-18), raising numerous claims, including the two claims he had raised on appeal (id. at 12,13-14), plus a claim that "one question [was] not

asked of [Petitioner's supervisor that] would validate and corrob[o]rate alibi [and a] second question[] of [Petitioner's brother] would show a possible motive for l[y]ing by [P.M.]" (id. at 16).

Through counsel, Petitioner subsequently filed an amended motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 raising two claims.  (Id. at 19-35.) Petitioner first claimed he was denied his constitutional rights to the effective assistance of counsel, due process, and equal protection, when Petitioner's trial counsel failed to present, through Petitioner's supervisor, testimony that Petitioner ate lunch at work.  (Id. at 23.) Petitioner argued if his attorney had asked that question, the supervisor's answer, that Petitioner ate lunch at work, would show Petitioner could not have engaged in sodomy with P.M. during his lunch hour and would have countered the state's argument.  (Id. at 23-28.) Secondily, Petitioner alleged he was denied his constitutional rights to the effective assistance of counsel, due process, and equal protection, when his trial counsel failed to present, through Petitioner's niece, sister-in-law, and brother, testimony that P.M. did not have a good reputation in the community for truth and veracity, which was important because P.M. was the only one to testify directly to what Petitioner had done.  (Id. at 29-33.)  Petitioner argued he had told his trial attorney that P.M. had a reputation for telling lies to get attention and that his relatives knew about that reputation.  (Id. at 29.)  The amended petition also included a request for an evidentiary hearing.  (Id. at 34.)

The motion court conducted an evidentiary hearing on the second claim only.  (See Resp. Ex. B.)  During this hearing the motion court heard the testimony of Petitioner's brother

and sister-in-law, Petitioner's two trial attorneys, and, by deposition, Petitioner. (Id. and Resp. Ex. A at 53-76.)

The motion court denied the motion upon concluding that Petitioner's trial attorneys were not ineffective. (Motion Court's Findings of Fact and Conclusions of Law and Order, Petr.'s Ex.2, packet 2.) With respect to the first claim that counsel was ineffective for failing to ask Petitioner's supervisor about what Petitioner did during lunch while at work between August 1st and August 15th, 1997, the motion court found the supervisor's trial testimony "clearly refute[d]" the claim because the record shows the supervisor "did not have any idea of the whereabouts of the [Petitioner] at all times of the day during the charging period of this case." (Id. at 4.) The motion court expressly referred to the supervisor's trial testimony that he did not specifically remember when Petitioner worked during August 1997. (Id. at 3, referring to supervisor's testimony at 214-15 of the trial transcript.) The motion court further found that it was a matter of reasonable trial strategy for Petitioner's trial counsel not to ask Petitioner's brother, sister-in-law, and niece about P.M.'s reputation for truth and veracity in the community. (Id. at 4.) The motion court concluded, in relevant part, that these witnesses could corroborate P.M.'s assertions that Petitioner had given gifts and sent flowers to P.M. (Id.)

Petitioner appealed arguing the motion court clearly erred in denying his first claim, without an evidentiary hearing, because he alleged facts entitling him to relief, the challenge he raised was not conclusively refuted by the record, his trial counsel was ineffective in failing to ask Petitioner's supervisor whether Petitioner ate lunch at work during the relevant time, and

this failure was prejudicial because that testimony would answer "the state's argument that Petitioner could have gone home during his lunch hour and sodomized" P.M. (Resp. Ex. C at 14 and 18.) Petitioner contended trial counsel's failure to ask the supervisor about Petitioner's lunch times at work denied Petitioner the effective assistance of counsel and due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and provisions of the Missouri Constitution. For his second point on appeal, Petitioner argued the motion court clearly erred in finding his trial attorneys were not ineffective in failing to ask Petitioner's brother, sister-in-law, and niece about P.M.'s reputation for truth and veracity in the community. Petitioner also urged he was prejudiced by this failure because those witnesses' "testimony would have attacked the credibility of the only witness who testified [Petitioner] had deviate sexual intercourse with" P.M. (Id. at 16 and 23.)

The Missouri Court of Appeals affirmed the motion court's decision in a summary order accompanied by an unpublished memorandum opinion. (Resp. Ex. E.) In relevant part, the appellate court cited **Strickland v. Washington**, 466 U.S. 668 (1984), when discussing what was necessary to prevail on an ineffective assistance of counsel claim. More specifically, in determining the motion court properly denied the first claim without an evidentiary hearing, the appellate court concluded the supervisor's testimony "that he had no idea of [Petitioner]'s whereabouts during the charging period of the case clearly refutes [Petitioner]'s allegation that he would testify [Petitioner] ate lunch at work during that period." (Resp. Ex. E, unpublished memorandum opinion at 3.) Moreover, the appellate court found, such testimony "would not provide [Petitioner] with a viable defense because [Petitioner] could have made an exception

on the days in question." (Id.)   With respect to Petitioner's second point on appeal, the appellate court found it reasonable trial strategy not to question the three witnesses about P.M.'s reputation for truth and veracity in the community, because Petitioner had not shown this impeachment testimony would have provided him with a defense or changed the outcome of trial. (Id. at 4-5.)   Additionally, the appellate court concluded it was not clear from the record that these witnesses were qualified to testify about P.M.'s reputation in the community for truth and veracity, and these witnesses "could corroborate evidence [Petitioner] had given [P.M.] gifts of jewelry and flowers and had written her a card and a letter." (Id. at 4.)

Petitioner then filed this habeas action presenting four grounds for relief.[7]  For ground one, he claims the trial court denied his rights to due process, to present a defense, and to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments by refusing to give alibi instructions mentioning "the mid-day hours" in addition to the dates of the offenses. (Doc. 3 at 10.)  In ground two, he alleges the trial court violated his rights to due process and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments by denying his motion in limine to preclude, and overruling his objections to, the admission into evidence of the letter and card. (Id. at 19.)  The third ground for relief is a claim that his trial counsel

_____

[7]  In his pro se petition, Petitioner specifically enumerates three grounds for relief. (Doc. 3 at 9 and 27.)  The last enumerated ground presents an ineffective assistance of counsel claim based on trial counsel's failure to show through his supervisor that he "could not have had deviate sexual intercourse with [P.M.] during his lunch hour because he ate lunch at work." (Id. at 28.)  The supporting facts for that ground include a statement that he was denied the effective assistance of counsel when trial counsel failed to show that P.M. did not have a good reputation for truth and veracity in the community through the testimony of Petitioner's brother, sister-in-law, and niece. (Id. at 31.)  In responding to the petition, Respondent analyzes the petition as presenting four claims. (Doc. 6 at 2-9.)  The Court will address Petitioner's petition as presenting four claims for habeas relief.

provided ineffective assistance of counsel and violated his rights to due process and equal protection by failing to ask Petitioner's supervisor whether Petitioner ate lunch at work during the relevant time. (Id. at 28.) For his fourth claim, Petitioner argues his trial counsel provided ineffective assistance of counsel and violated his rights to due process and equal protection by failing to ask Petitioner's brother, sister-in-law, and niece about P.M.'s reputation for truth and veracity in the community. (Id. at 31.)

Standard of Review. Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)). See also **Weaver v. Bowersox**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

Under the "unreasonable application" part of § 2254(d)(1), the "court may grant the writ if the state court . . . 'applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases . . . .'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir.), cert. denied, 129 S.Ct. 158 (2008) (quoting Penry v. Johnson, 532 U.S. 782, 792 (2001)) (second and third alterations in original). Second, the court may grant the writ under § 2254(d)(1) if the state

court "'confront[ed] a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrive[d] at a result different from [that Court's] precedent.'" **Id.** (quoting Penry, 532 U.S. at 792) (first and third alterations in original). A state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Id.** (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).

The court may only grant a writ under § 2254(d)(2) "if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004)).

Pursuant to § 2254(e)(1), the state court's determinations of factual issues are presumed correct and the petitioner has the burden "of rebutting the presumption of correctness by clear and convincing evidence." This deference owed to the state courts includes deference to state court credibility determinations. **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir.) (en banc), petition for cert. filed, ___ U.S.L.W. ____ (U.S. Nov. 26, 2008) (No. 08-7465). Notably, this presumption of correctness applies to the factual determinations made by both the state trial court and the state appellate court. **Id.** Moreover, "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim are presumed to be correct. **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).

Additionally, "the 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254(d)'s] standard." **Brown v.**

**Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc). A state court's summary decision is presumed to be on the merits for purposes of habeas review. **Carter v. Bowersox**, 265 F.3d 705, 712 (8th Cir. 2001).

To ascertain the reasonableness of the state court's resolution of the issues, the court on habeas review may consider federal court decisions in factually similar cases. **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000).

Alibi Instructions.    Petitioner first claims that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights to due process, to present a defense, and to a fair trial by refusing to give either set of Petitioner's proffered alibi instructions containing language directing the jury to determine where Petitioner was during "the mid-day hours" either on August 11, 1997, and August 15, 1997, or "between August 1, 1997 and August 15, 1997." (Doc. 3 at 10-18.) Petitioner argues that the failure to

> include [the] specific times nullified Petitioner[']s alibi defense. Time was of decisive importance in Petitioner[']s case because[,] on the relevant dates, Petitioner resided at the place where the charged offenses occurred. There was absolutely no possibility jurors would find Petitioner not guilty on the basis of the submitted alibi instructions because Petitioner was no doubt home for some portion of each day of the relevant time period.

(Doc. 3 at 10.)

Respondents argue this claim is barred by **Teague v. Lane**, 489 U.S. 288 (1989) (plurality opinion), in that "this court would . . . have to retroactively apply a new rule of criminal procedure, [which] **Teague** forbids," in order to grant Petitioner relief on this claim. (Doc. 6 at 3). Specifically, Respondent urges the United States Supreme Court has never held,

and its decisions do not dictate, that a trial court's rejection of a proper alibi instruction tendered by a defendant violates the Constitution. Additionally, Respondent contends this claim is meritless because there is no constitutional requirement that a specific alibi instruction must be given when requested by a defendant.

The non-retroactivity principle set forth in **Teague** "*prevents* a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." **Caspari v. Bohlen**, 510 U.S. 383, 389 (1994). This Court "must conduct a threshold **Teague** analysis when the issue is properly raised by the state," **Horn v. Banks**, 536 U.S. 266, 272 (2002) (per curiam), and that analysis must occur before the Court considers the merits of the claim, **id.** at 271; **Caspari**, 510 U.S. at 389; **Sweet v. Delo**, 125 F.3d 1144, 1155 (8th Cir. 1997). A state properly raises **Teague** by arguing the petitioner "seeks the benefit of a new rule of constitutional law." **Caspari**, 510 U.S. at 389. Here, Respondent has properly raised **Teague** in response to Petitioner's first claim. The Court will, therefore, first consider that claim under **Teague**.

To apply **Teague**, the Court first ascertains "the date on which the [petitioner]'s conviction became final for **Teague** purposes." **Id.** at 390; see also **Beard v. Banks**, 542 U.S. 406, 411 (2004); **Sweet**, 125 F.3d at 1155. "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." **Caspari**, 510 U.S. at 390; see also **Beard**, 542 U.S.

at 411. The Missouri Court of Appeals denied Petitioner's motion for rehearing on May 2, 2002. (Attachment to Petr.'s Notice of Filing Application to Transfer to the Supreme Court of Missouri.) Petitioner did not file a petition for a writ of certiorari. Therefore, Petitioner's conviction and sentence became final ninety days later, or by August 2002. 28 U.S.C. § 2101(d); Supreme Court Rules 13.3 and 30.1.

Second, the Court surveys the law existing when the conviction became final and determines whether the rule the petitioner seeks was required by the Constitution based on precedent existing at the time the conviction became final. **Beard**, 542 U.S. at 411; **Caspari**, 510 U.S. at 390. As of August 2002, no Supreme Court decision concluded that a failure to give an alibi instruction, much less an alibi instruction specifying a time rather than only a location, violated the Constitution. See, e.g., **Duckett v. Godinez**, 67 F.3d 734, 744 (9th Cir. 1995); Jack R. Friedman, Criminal Procedure – Alibi Instructions and Due Process of Law, 20 W. New Eng. L. Rev. 343, 344 (1998). Due to the absence of pre-August 2002 precedent that a failure to give an alibi defense instruction setting forth a time, rather than only a location, relevant to the offense is unconstitutional, Petitioner would be successful on this habeas claim only if a new rule applied.

"[I]f the court determines that the [petitioner] seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the non-retroactivity principle." **Caspari**, 510 U.S. at 390; **Sweet**, 125 F.3d at 1156. The first exception precludes application of **Teague** "to rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants

because of their status or offense." **Beard**, 542 U.S. at 416 (quoting <u>Penry v. Lynaugh</u>, 492 U.S. 302, 330 (1989) (alteration in original). This exception does not apply here because a rule regarding alibi instructions does not address punishment in any manner. "The second exception is for 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" **Id**. at 417 (quoting <u>O'Dell v. Netherland</u>, 521 U.S. 151, 157 (1997)). This exception also does not apply here because a rule precluding the refusal of an alibi instruction that includes the time, rather than just the location, of the offense does not fall within the "limited scope of the second **Teague** exception [which is] 'clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty.'" **Id**. (quoting <u>O'Dell</u>, 521 U.S. at 157) (second alteration in original).

**Teague** bars relief on this claim. Petitioner's proposed new rule, to prohibit as unconstitutional the rejection of alibi defense instructions that include the time, rather than only the location, of the offense, does not fall within either **Teague** exception. The Court denies the claim as barred by **Teague**, without addressing the merits of the claim.

<u>Admission of the Card and Letter</u>. For his second ground, Petitioner argues the trial court violated his rights to due process and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments by denying his motion in limine to preclude, and overruling his objections to, the admission into evidence of the letter and card. (Doc. 3 at 19.) Petitioner urges there was no evidence of their authenticity or genuineness, absent evidence of reliability

they constituted inadmissible hearsay, and Petitioner was prejudiced by their admission because Petitioner had an alibi defense and the card and letter tended to connect Petitioner to the offenses.

Respondent counters that the alleged prejudice is what made the letter and card admissible, a habeas claim based on a failure to limit the prosecution's evidence raises a "catch-all sense of due process, and . . . almost always fails," **Watkins v. Meloy**, 95 F.3d 4, 7 (7th Cir. 1996) (citations omitted), and there was no unfair prejudice resulting from the admission of the letter and card.

"[I]n habeas corpus proceedings, it is not within [the federal court's] province 'to reexamine state-court determinations on state-law questions.'" **Johnston v. Luebbers**, 288 F.3d 1048, 1056 (8th Cir. 2002) (quoting Estelle v. McQuire, 502 U.S. 62, 67-68 (1991)). See also **Taylor v. Bowersox**, 329 F.3d 963, 968 (8th Cir. 2003) ("A state's interpretation of its own law is virtually unreviewable by a federal court"). Thus, "'[a] state court's evidentiary rulings can form the basis for habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.'" **Osborne v. Purkett**, 411 F.3d 911, 917 (8th Cir. 2005) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)). Accord **Rousan v. Roper**, 436 F.3d 951, 958-59 (8th Cir. 2006). "[T]his due process standard mandates a greater showing of prejudice than is needed to support a finding of plain error on direct appeal." **Griffin v. Delo**, 33 F.3d 895, 905 (8th Cir. 1994). Consequently, federal habeas review of an alleged due

process violation in a state court conviction is narrow. **Anderson v. Goeke**, 44 F.3d 675, 679 (8th Cir. 1995).

Through its summary order on direct appeal, the state appellate court found no error in any of the challenged rulings. At trial, evidence of other items received by P.M. from Petitioner around the time of the offenses was admitted, including earrings, a ring, a watch, and a dozen long-stemmed roses, and Petitioner has not challenged the admission of those items in this habeas proceeding. Those items were similar in nature to the words in the card and letter in conveying Petitioner's attraction to or interest in P.M. Petitioner has failed to show any prejudice from the admission of the letter and card, much less prejudice that is "of such magnitude as to fatally infect the trial and deprive the defendant of due process." **Osborne**, 411 F.3d at 917 (quoting Parker, 94 F.3d at 460). Petitioner has not established either that the state court's determination regarding the admission of the card and letter was contrary to, or involved an unreasonable application of, clearly established federal law, or that the state court's determination was based on an unreasonable determination of the facts in light of the evidence. The claim arising from the admission at trial of the letter and card P.M. received from Petitioner is denied.

Ineffective Assistance of Counsel. For his third and fourth claims, Petitioner urges his trial counsel provided ineffective assistance of counsel and violated his rights to due process and equal protection by failing to ask Petitioner's supervisor whether Petitioner ate lunch at work during the relevant time (Doc. 3 at 28) and by failing to ask Petitioner's brother, sister-in-

law, and niece about P.M.'s reputation for truth and veracity in the community (Doc. 3 at 31).

Respondent counters that the state court's denial of the ineffective assistance claim regarding the failure to question the supervisor about Petitioner's lunch was objectively reasonable and correct. Specifically, Respondent argues, the findings of the appellate court on appeal from the motion court's denial of Petitioner's post-conviction motion are presumed correct under 28 U.S.C. § 2254(e)(1), and Petitioner has not explained how those findings are incorrect. Because the supervisor could not provide the testimony Petitioner urges his trial counsel improperly failed to elicit, Petitioner's ineffective assistance counsel fails. With respect to the fourth ground, Respondent argues the claim is meritless based on the state appellate court's findings, which are presumed correct under 28 U.S.C. § 2254(e)(1), which establish these three witnesses did not have personal knowledge of any reputation P.M. may have for lying, even though they lived on the same street as P.M. for approximately one year before the offenses. Additionally, Respondent points out, even if they could have given such reputation testimony, defense counsel did not act unreasonably in failing to elicit that reputation testimony from these witnesses because they were all relatives of Petitioner and "had an obvious motive to lie about" P.M., and "the reputation testimony would have allowed the prosecutor to adduce from them testimony that [Petitioner] gave [P.M.] gifts of jewelry and flowers and written her a card and letter, corroborating the State's theory." (Doc. 6 at 9.)

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007)

(citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 377 (1986)), <u>cert. denied</u>, 129 S.Ct. 754 (2008). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense." **<u>Id.</u>** (citations omitted) (citing <u>Strickland</u>, 466 U.S. at 687)); **<u>Kellogg v. Skon</u>**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **<u>Greiman v. Thalacker</u>**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting <u>Strickland</u>, 466 U.S. at 687). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **<u>Id.</u>** (quoting <u>Strickland</u>, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **<u>Carroll v. Schriro</u>**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). "'In making this determination, a court . . . must consider the totality of the evidence before the judge or jury.'" **<u>Lawrence v. Armontrout</u>**, 31 F.3d 662, 666 (8th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 695). The petitioner bears the burden of showing such a reasonable probability. **<u>Lawrence v. Armontrout</u>**, 961 F.2d 113, 115 (8th Cir. 1992).

If a petitioner fails to prove either prong, the court need not address the other prong required to establish the ineffective assistance of counsel claim. See **<u>Strickland</u>**, 466 U.S. at

697; **Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).

Importantly, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

Based on the supervisor's trial testimony that he did not know specifically when Petitioner worked during August 1997 (Resp.'s Ex. G at 214-15), the motion court found counsel was not ineffective for failing to ask the supervisor about what Petitioner did during lunch while he was at work between August 1st and August 15th, 1997, because the supervisor "did not have any idea of the whereabouts of the [Petitioner] at all times of the day during the charging period of this case." (Motion Court's Findings of Fact and Conclusions of Law and Order at 3 and 4, Petr.'s Ex. 2, packet 2.) In affirming the motion court's decision, the appellate court cited Strickland, agreed with the motion court's determination, and noted the supervisor's testimony would not provide Petitioner "with a viable defense because [Petitioner] could have made an exception on the days in question." (Resp. Ex. E unpublished memorandum opinion at 3.)

Petitioner has not shown either that his trial counsel's failure to question the supervisor about Petitioner's lunches while at work in August 1997 constituted deficient performance or that there is a reasonable probability the result of the trial would have been different if counsel had asked the supervisor about Petitioner's lunches during his work hours in August 1997. Nor has Petitioner provided clear and convincing evidence to rebut the presumption of

correctness accorded to the state appellate court's factual determinations. Petitioner has not established either that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts in light of the evidence. The ineffective assistance of counsel claim based on trial counsel's failure to question Petitioner's supervisor about what Petitioner did during lunch when he was at work in early August 1997 is denied.

With respect to the other ineffective assistance of counsel claim, both of Petitioner's trial attorneys, as well as Petitioner's brother, sister-in-law, and niece, testified at the hearing on the post-conviction motion. (Resp.'s Ex. B at 56-78 and 80-96). Both attorneys testified, in relevant part, that Petitioner admitted, during a pretrial meeting with Petitioner, Petitioner's counsel, Petitioner's brother, and Petitioner's sister-in-law, that he had written the letter P.M. received and he had sent P.M. the flowers, and counsel was trying to downplay the gifts, card and letter in part because they tended to bolster P.M.'s credibility. (Resp. Ex. B at 59-60, 63-64, 83-84, 88, and 92-93.) Petitioner testified by deposition that he did not think he admitted sending the flowers, card, or letter to P.M. (Resp.'s Ex. A at 71-72.)

With regard to P.M.'s reputation for truth and veracity, Petitioner's sister-in-law testified she knew, but did not talk to, kids who knew P.M. (Resp.'s Ex. B at 7), she did not remember any specific untruthful information P.M. told her (id. at 8), she told her daughter to be nice to P.M. (id. at 20), she thought P.M. was untruthful based on stories P.M. had told her (id. at 21), and she could not remember names of others to whom P.M. had disclosed lies (id. at 23). Petitioner's brother testified that P.M. had a reputation for "[m]aking up stories

24

[and] exaggerating [and that he had] caught [P.M.] in a few lies, like just general things," (id. at 28) and did not provide more specific information about P.M.'s reputation in the community for truthfulness and veracity. Petitioner's niece testified that P.M. had a "reputation for untruthfulness in certain circumstances . . . [b]y saying one thing . . . [s]he would stretch it to her benefit" (id. at 44, 45, and 46) and did not provide more specific information about P.M.'s reputation in the community for truthfulness and veracity. By deposition, Petitioner testified that P.M.'s reputation in the community was that "she makes up stories to gain attention" (Resp.'s Ex. A at 64), he had heard "things about her . . . [from] a couple of the neighbors and mostly the kids in the neighborhood when they were talking" (id. at 62), and did not provide more specific information about P.M.'s reputation in the community for truthfulness and veracity.

The motion court found that it was a matter of reasonable trial strategy for Petitioner's trial counsel not to ask Petitioner's brother, sister-in-law, and niece about P.M.'s reputation for truth and veracity in the community. (Motion Court's Findings of Fact and Conclusions of Law and Order, Petr.'s Ex.2, packet 2, at 4.) The motion court concluded, in relevant part, that these witnesses could corroborate P.M.'s assertions that Petitioner had given gifts and sent flowers to P.M. (Id.) The appellate court cited Strickland and found it reasonable trial strategy not to question the three witnesses about P.M.'s reputation for truth and veracity in the community because Petitioner had not shown this impeachment testimony would have provided him with a defense or changed the outcome of trial. ((Resp. Ex. E backup memorandum at 4-5.) Additionally, the appellate court concluded it was not clear from the

record that these witnesses were qualified to testify about P.M.'s reputation in the community for truth and veracity, and these witnesses "could corroborate evidence [Petitioner] had given [P.M.] gifts of jewelry and flowers and had written her a card and a letter."  (Id. at 4.)

It was reasonable trial strategy not to ask about P.M.'s reputation in the community for truth and veracity due to the gifts P.M. received from Petitioner, which corroborated her testimony.  Petitioner has not shown either that his trial counsel's failure to question his relatives about P.M.'s reputation in the community for truth and veracity constituted deficient performance or that there is a reasonable probability the result of the trial would have been different if counsel had asked those relatives about P.M.'s reputation in the community for truth and veracity.  Nor has Petitioner provided clear and convincing evidence to rebut the presumption of correctness accorded to the state appellate court's factual determinations. Petitioner has not established either that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the state court's decision was based on an unreasonable determination of the facts in light of the evidence.  The ineffective assistance of counsel claim based on counsel's failure to question Petitioner's relatives about P.M.'s reputation in the community for truth and veracity is denied.

### Conclusion

For the foregoing reasons, Petitioner's four § 2254 claims are either barred by **Teague** or without merit.

Accordingly,

**IT IS HEREBY ORDERED** that Scott Lawrence is **SUBSTITUTED** for Al Luebbers as a Respondent in this case.

**IT IS FURTHER ORDERED** that the Attorney General of Missouri, Chris Koster, is added as a Respondent.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **IMMEDIATELY FILE UNDER SEAL** the exhibits Respondent filed in paper format to support Respondent's Response to Order to Show Cause [Doc. 8].

**IT IS FURTHER ORDERED** that the 28 U.S.C. **§** 2254 petition of Leon Lesmeister is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert,III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE



Dated this 5th day of March, 2009.